IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ODESSA FORD, LLC and                        )
ODESSA CHRYSLER JEEP DODGE, LLC,            )
                                            )
            Plaintiffs,                      )
                                            )
v.                                          )        Case No. 07-2161-CM
                                            )
T.E.N. INVESTMENTS, INC.,                   )
                                            )
            Defendant.                       )

## ORDER

### I.  Introduction

This is a breach of contract case.  The defendant, T.E.N. Investments, Inc. ("T.E.N."), has filed a motion to strike certain post-deposition corrections made by the Fed. R. Civ. P. 30(b)(6) representative of the plaintiffs, Odessa Ford, LLC and Odessa Chrysler Jeep Dodge, LLC **(doc. 155)**.  T.E.N. has filed a supporting memorandum (doc. 156), plaintiffs have filed a response (doc. 163), and T.E.N. has filed a reply (doc. 169).

Significantly, the instant motion does *not* involve the fairly common situation where the court reporter simply misunderstood what the witness said during a deposition and as a result inaccurately transcribed the testimony, or mere typographical errors by the reporter in preparing the transcript.  Nor is this a situation where the deponent claims he really meant to say "x" but just got mixed up and said "y."  Instead, as explained in detail below, this motion involves wholesale changes to testimony on matters material to the merits of the

O:\ORDERS\07-2161-CM-155.wpd

case.  Accordingly, the undersigned U.S. Magistrate Judge, James P. O'Hara, will strike all but two of the witness' challenged deposition changes.

## II.  Background

This litigation arises out of an asset purchase and sale agreement (the "Agreement") between Monopoly Acquisitions, LLC ("Monopoly") (as buyer) and T.E.N. (as seller). Monopoly assigned its interests in the subject assets (automobiles) to plaintiffs.  Although many claims originally were asserted, all that remains is a breach of contract claim against T.E.N.[1]

On February 4, 5, and 27, 2008, T.E.N. conducted a deposition of plaintiffs pursuant to Fed. R. Civ. P. 30(b)(6).  The 30(b)(6) corporate representative whom plaintiffs chose to produce was Christopher S. Payne.  Mr. Payne reviewed the reporter's transcript of his deposition testimony and made several changes on April 3, 2008 (*see* doc. 156, ex. B).  On June 9, 2008, T.E.N. timely filed a motion for summary judgment (doc. 149), which now has been fully briefed and awaits a decision by the presiding U.S. District Judge, Hon. Carlos Murguia.  T.E.N. filed the instant motion on June 20, 2008, requesting the court strike certain of Mr. Payne's changes.

## III.  Analysis & Discussion

A.  Plaintiffs' Procedural Arguments

Initially, the court rejects the plaintiffs' argument that T.E.N.'s motion is untimely.

---

[1]*See* docs. 48 & 113.

Plaintiffs rely on D. Kan. Rule 37.1(b), which requires "[a]ny *motion to compel discovery* in compliance with D. Kan. Rules 7.1 and 37.2 [to] be filed and served within 30 days of the default or service of the response, answer or objection which is the subject of the motion." Very simply, but ignored by plaintiffs, the instant motion to strike is not a motion to compel discovery. Therefore, it is not subject to D. Kan. Rule 37.1(b)'s thirty-day deadline.

Similarly, plaintiffs unpersuasively argue that the instant motion should be denied because T.E.N. failed to follow the meet-and-confer requirements under the court's local rules. D. Kan. Rule 37.2 provides:

> The court will not entertain any motion to resolve a discovery dispute pursuant to Fed. R. Civ. P. 26 through 37, or a motion to quash or modify a subpoena pursuant to Fed. R. Civ. P. 45(c), unless counsel for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion.

The instant motion simply is not a motion to resolve a discovery dispute. Nor is it a motion to quash or modify a subpoena. Therefore, T.E.N. was not required to comply with D. Kan. Rule 37.2's meet-and-confer requirement. In any event, defense counsel at least attempted to confer with plaintiffs' counsel by sending a letter regarding Mr. Payne's deposition changes (doc. 169, ex. 1), to which only a very brief response was provided (doc. 169, ex. 2).

The court flatly rejects plaintiffs' argument that it is necessary or appropriate to rule the objections made during Mr. Payne's deposition before deciding the instant motion.

Plaintiffs' argument is unaccompanied by citation to *any* supporting authority in this regard. In any event, plaintiffs ignore that all objections made during their representative's 30(b)(6) deposition will be ruled, if necessary, closer to trial.  There is no support for plaintiffs' request to first require T.E.N. to designate which of Mr. Payne's testimony it intends to offer at trial.  Significantly, T.E.N. maintains that Mr. Payne may be compelled to testify live at trial and that his deposition testimony is critical for impeachment on cross-examination.  The court agrees that Mr. Payne's deposition testimony may be important at trial even if T.E.N. never designates *any* of his deposition testimony at trial.  The court rejects out of hand plaintiffs' unfounded and speculative accusation that T.E.N. intentionally waited until the close of discovery to file the instant motion to avoid having to reopen Mr. Payne's deposition.

Finally, plaintiffs argue the instant motion should be denied because T.E.N. never sought to take additional testimony from them or Mr. Payne after receiving his corrections. The case on which plaintiffs rely, *Hayes v. Cosentino's Price Chopper Food Stores, Inc.*,[2] does not stand for the proposition that a party *must* seek to reopen a deposition before requesting changes be stricken.  It is true that the defendant in *Hayes* moved to reopen a deposition, asserting the deponent had made material changes after reviewing the transcript.[3] That is, in lieu of seeking to strike the witness' changes to his deposition, the movant in

---

[2]No. 03-2075, 2004 WL 1005283 (D. Kan. Apr. 13, 2004).

[3]*Id.* at *1.

*Hayes* merely sought to explore the deposition changes and the reasons therefor.[4]  At least in those few cases that are almost certain to be tried instead of the vast majority that are settled or resolved on summary judgment, *Hayes* reflects a sound tactical approach.  That is, it can be very effective in setting up an adverse witness for impeachment with at least two (and usually more) different versions of his testimony on the same point.   But regardless of the tactical options involved, the court finds as a matter of law that T.E.N. was not required to first try to reopen Mr. Payne's deposition or conduct any other discovery before filing the instant motion.

B.  Application of Governing Legal Standards

Fed. R. Civ. P. 30(e)(1) states:

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

"Rule 30(e) permits non-material changes to deposition testimony . . . . A change is material if it bears on an essential element of a claim or defense."[5]   Also permitted, though, are

---

[4]*Id.*; *see also ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135, 2007 WL 4259484, at *2 (D. Kan. Dec. 3, 2007) (declining to follow *Hayes*, in part, because the movant did not seek to strike deposition changes).

[5]*Summerhouse v. HCA Health Servs. of Kan.*, 216 F.R.D. 502, 508 (D. Kan. 2003). In *Summerhouse*, U.S. Magistrate Judge Donald W. Bostwick provides an exceptionally thorough and helpful review of the development of law on this point in the Tenth Circuit and District of Kansas.

material changes but only provided they pass muster under the Tenth Circuit's test as articulated in *Franks v. Nimmo*[6] which has been used in an analogous situation to determine whether an affidavit conflicting with earlier deposition testimony presents a sham issue for purposes of fending off a summary judgment motion.[7]  That is, factors to consider in determining whether to allow a change include "'whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain.'"[8]

The Tenth Circuit has also generally stated:

> "[T]he Rule cannot be interpreted to allow one to alter what was said under oath.  If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses.  Depositions differ from interrogatories in that regard.  A deposition is not a take home examination."[9]

Actually, in a case such as this one where the witness is represented by counsel, allowing wholesale changes to sworn testimony is more akin to a take home examination assisted by

---

[6]796 F.2d 1230, 1237 (10th Cir. 1986).

[7]*Burns v. Bd. of County Comm'rs of Jackson County, Kan.*, 330 F.3d 1275, 1282 (10th Cir. 2003); *Summerhouse*, 216 F.R.D. at 507.

[8]*Burns*, 330 F.3d at 1282 (quoting *Franks*, 796 F.2d at 1237).

[9]*Id.* (quoting *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002)).

one's private tutor.  If allowed to go unchecked, this would subvert the mandate of Fed. R. Civ. P. 30(c)(1) that the examination and cross-examination during a deposition should proceed as they would at trial.  That is, in the real world, when (not if) a client says something damaging on the witness stand during trial, his lawyer typically does not get to force a break in order to woodshed the client about the "correct" answer to opposing counsel's questions, and then expect the trier of fact to accept the lawyer's polished version of the client's testimony.

Plaintiffs suggest that because only T.E.N. elected to rely on *some* of Mr. Payne's deposition testimony in its pending motion for summary judgment (*see* doc. 150), *none* of his deposition corrections should be stricken.  However, it is now well-established in the Tenth Circuit that "whatever changes Rule 30(e) permits, they are permitted without regard to the pendency of a summary judgment motion."[10]  It follows that it is immaterial whether any party is relying on Mr. Payne's deposition testimony in a pending motion for summary judgment.  Further, T.E.N. does not appear to rely on *any* of Mr. Payne's *changed* deposition testimony, or at least those changes at issue in the instant motion.

T.E.N. asserts that Mr. Payne was cross-examined during his deposition, and this assertion has not been challenged by plaintiffs.  Therefore, this factor weighs on the side of striking his deposition changes.

Plaintiffs generally complain that T.E.N.'s counsel's examination style at the

---

[10]*See Summerhouse*, 216 F.R.D. at 507.

deposition was confusing to Mr. Payne, who is a lay witness and does not have a college degree.  T.E.N. responds by noting that Mr. Payne did not ask for the questions at issue to be repeated, did not seek clarification of the questions or an opportunity to clarify his answers, and that plaintiffs' counsel did not follow up with questions designed to elicit any clarifications Mr. Payne now seeks to offer.  T.E.N. also argues that Mr. Payne has the intelligence to understand the deposition questions, because he is the principal owner of or involved in multiple businesses, has been involved in the car business for more than ten years, and has engaged in multiple business transactions.  The court is unpersuaded that Mr. Payne was so confused during the entire deposition that he needed to clarify so many answers.  But the court will consider whether each of Mr. Payne's deposition answers at issue reflects confusion and whether his subsequent changes are attempts to clarify or explain his confusion.

For ease of reference, the court has attached an appendix to this order summarizing Mr. Payne's original deposition testimony and his proposed changes.[11]  The court will now proceed to discuss the materiality of Mr. Payne's changes to his deposition testimony and apply the remainder of the *Franks* factors to the extent necessary.

<u>Changes to testimony at 142:4-14</u>: The court finds this change is material, at least arguably, to Mr. Payne's position regarding T.E.N.'s affirmative defense based on the limitations provision of the Agreement.  As stated above, the court declines to rule on

---

[11] *See* ex. A.

plaintiffs' counsel's objection to the form of this question at this time.  Mr. Payne claims that his corrected answer was based upon the entire reading of section 11.1 of the Agreement, as opposed to a partial and limited reading during the deposition.  But it is uncontroverted that Mr. Payne had access to the Agreement at the time of his deposition.  Therefore, his changed answer is not based on newly discovered evidence.  Further, Mr. Payne's deposition testimony does not reflect any confusion he attempts to explain with his changed answer. Mr. Payne did not hesitate in answering and did not request to review section 11.1 of the Agreement.   Indeed, his changed answer is completely contrary to his answer at his deposition because he changed his previous answer of "yes" to "no."  This change to Mr. Payne's deposition is stricken.

Changes to testimony at 241:21-22 & 241:23 to 242:5: The first four questions relate to Mr. Payne's property at the Lake of the Ozarks.   Later questions relate to cross-collateralization of loans and long-term debt.  Plaintiffs seem to argue that Mr. Payne's changes are not material to any of the claims or defenses in this case because he is not a plaintiff and there is no claim of damages related to his personal property, cross-collateralization of loans, or long-term debt in the pretrial order (doc. 147).  Plaintiffs also argue that the corrections should not be used for impeachment of Mr. Payne.  T.E.N. responds by arguing that, depending upon how the court rules T.E.N.'s pending motion to dismiss as a discovery sanction (doc. 122), and also depending on how the court rules on T.E.N.'s forthcoming motion in limine to exclude evidence of alleged damages not suffered

by plaintiffs, these proposed changes are material to the issue of damages and affect T.E.N.'s ability to impeach Mr. Payne on the subject.

Judge Murguia referred the motion to dismiss as a discovery sanction to the undersigned magistrate judge (*see* doc. 134), and the undersigned issued a report and recommendation regarding the motion (doc. 164). Both plaintiffs and T.E.N. have filed objections to the undersigned's report and recommendation (docs. 168 & 170), which Judge Murguia will consider in ruling on the motion to dismiss. If Judge Murguia decides to impose sanctions on plaintiffs, he may dismiss this case, limit the damages evidence plaintiffs may present, and/or impose other sanctions on plaintiffs. Until then, however, the damages plaintiffs claim are far from clear.[12]

In the pretrial order, plaintiffs claim damages for capital replacement.[13] In their second supplemental answer to T.E.N.'s Interrogatory No. 16, plaintiffs describe their capital replacement damages, and state that Mr. Payne was required to sell his home, lake home, and boat to generate cash for capital replacement, as well as infuse the businesses with his liquid capital from other ventures.[14] At this time, because plaintiffs' claimed damages are unclear and T.E.N.'s motion to dismiss remains pending, Mr. Payne's changes to his deposition regarding his lake home, cross-collateralization of loans, and long-term

---

[12]*See* doc. 164, at 3-8.

[13]Doc. 147, at 17, para. 10(a).

[14]Doc. 123, ex. 2, at 3.

debt are material to plaintiffs' damages claims.

These changes relate to whether Mr. Payne's house at the Lake of the Ozarks was investment property and whether he ever had a home there.  Certainly, Mr. Payne had access to information about his property at the lake when he was deposed.  His changes can therefore not be based on newly discovered evidence.  Mr. Payne's deposition does not reflect any confusion.  Mr. Payne's change that the property at 415 Regency Cove was not investment property directly conflicts with his original testimony that he had stayed at some his properties but they were not considered residences and were always for sale.  Mr. Payne's explanation for changing his testimony based on it being a painful situation and not wanting to go into detail is an insufficient basis to alter his testimony that was given under oath.  These changes are stricken.

Changes to testimony at 242:4-6: Here, Mr. Payne attempts to change his testimony to read that his home at the lake was not always for sale but his investment properties were always for sale.  This directly conflicts with his previous testimony that the properties he owned at the lake have always been for sale.  Mr. Payne's deposition does not reflect any confusion, and this answer is not based on newly discovered evidence.  Again, Mr. Payne's explanation that this was painful and embarrassing to discuss is insufficient.  This change is stricken.

Changes to testimony at 242:9-13: In response to a question about what his taxable gain was on the sale of a lake property, Mr. Payne's deposition response was, "I would say

close to a hundred.  I don't know.  Those figures aren't–they haven't been calculated by my accountant or I."  Mr. Payne now wishes to change his testimony to state that he and his wife lost approximately sixty thousand dollars.  Mr. Payne seems to indicate that he thought about this calculation after his deposition.  Although Mr. Payne may have thought about his gain only after the deposition, plaintiffs have failed to show that his calculation was based on newly discovered evidence.  The court therefore finds that Mr. Payne had access to the pertinent evidence at the time of his deposition.  The court once again finds Mr. Payne's deposition does not reflect any confusion, and therefore this change is stricken.

Changes to testimony at 247:3-6: This change relates to whether Mr. Payne had control of the inventory in 2007 with respect to Odessa Chrysler Jeep Dodge and is therefore material to plaintiffs' breach of contract claim regarding excess inventory.  Mr. Payne's change is not based on newly discovered evidence.  Mr. Payne's deposition does not reflect any confusion regarding the inventory about which Mr. Payne was being asked.  Mr. Payne claims he did not have time to finish his answer before his attorney objected and T.E.N.'s attorney moved to the next question.  Mr. Payne, however, did not ask to finish or clarify his answer.  This change is stricken.

Changes to testimony at 260:3-13: Here, Mr. Payne attempts to change his answer regarding when Nathan Parker was employed by him.  This change is material to whether inventory was ordered by Mr. Payne or his team.  There is no indication this change is based on newly discovered evidence.  The court finds, however, that Mr. Payne's change attempts

to clarify his answer and correct confusion in his deposition.  When asked whether Mr. Parker worked for him or his entities prior to November 14, 2005, Mr. Payne said "no."[15] However, when asked whether Mr. Parker worked for him in any capacity prior to November 14, 2005, he answered "yes."  It appears Mr. Payne was confused with when Mr. Parker was hired versus when he actually started working.  His change merely clarifies his answer.  This change is therefore not stricken.

Changes to testimony at 290:23 to 291:8; 291:9-12; 303:2-9; & 307:7-14: These changes relate to cross-collateralization and long-term debt, which, as stated above, are material.  These changes do not attempt to explain any confusion reflected in the original deposition testimony and are not based on newly discovered evidence.  Although Mr. Payne classifies his changes as mere attempts to clarify his answers, he goes beyond mere clarification and attempts to materially alter his answers.  These changes are stricken.

Changes to testimony at 362:2 to 363:3: This relates to whether Mr. Payne had knowledge about an exhibit prepared by Donna Smith, plaintiffs' now stricken expert.[16] This change is clearly material to the calculation of plaintiffs' damages.  This change is not based on newly discovered evidence and the original testimony does not reflect confusion. Mr. Payne's original testimony was that he did not recall seeing the exhibit before and did

---

[15]Doc. 156, ex. A, at 7 (259:24 to 260:2).

[16]On February 11, 2008, the court ordered plaintiffs' expert's report stricken and precluded her from testifying at trial for failing to comply with federal rules and previous court orders.  *See* doc. 114.

not prepare it.  When asked what the exhibit was, Mr. Payne stated that it appeared to be a spreadsheet and it looked like somebody had analyzed by historical numbers.  Mr. Payne then concluded that it was probably something that was produced by Donna Smith.[17]  When asked if the exhibit was something he had any personal knowledge about, he responded that "[s]ince the numbers are about me, I believe I would."[18]  Mr. Payne's changed answer is that he had "personal knowledge of this exhibit. [He] provided Donna Smith all the underlying facts and [he] worked with her as she created this document."

Mr. Payne suggests this is just a clarification of his prior answer.  The court finds that Mr. Payne's change, though, is obviously much more than a clarification.  His statement that he had personal knowledge of the exhibit directly conflicts with his previous testimony that did not recall even seeing the exhibit before.  Further, Mr. Payne's statement that he worked with Donna Smith on the document directly contradicts his earlier statement that he did not prepare the document.  Notably, plaintiffs' expert was stricken between the time of Mr. Payne's deposition and when he made his changes.  The plaintiffs argue that Mr. Payne changed his answer to prevent T.E.N. from erroneously believing he did not have any knowledge of the information in the documents.  But whether Mr. Payne had knowledge of the information contained in the documents is not the issue before the court.  This change goes beyond a mere clarification and is stricken.

---

[17]Doc. 156, ex. A, at 11 (362:9-15)

[18]*Id.* (362:18-22).

Changes to testimony at 366:16-24: These changes are material because they relate to plaintiffs' breach of contract claim and allegation that excess vehicles were ordered outside the ordinary course of business.  There is no indication Mr. Payne's changes are based on newly discovered evidence.  While completely contradicting his original answers, Mr. Payne indicates that he misunderstood T.E.N.'s counsel's questions.  But the record does not reflect any confusion by Mr. Payne.  He answered the deposition questions unequivocally and without hesitation.  These changes are stricken.

Changes to testimony at 387:13-22: These changes are material because they relate to the level of business of the dealerships before Mr. Payne's purchased them and whether they were operated outside the ordinary course of business.  The deposition testimony does not reflect any confusion by Mr. Payne.  Mr. Payne claims he remembered making two statements while he was reviewing documents during his deposition.  There is no indication the documents Mr. Payne reviewed were newly discovered or that he did not have access to them at this point in the deposition.  The court agrees with T.E.N. that Mr. Payne's changes fundamentally alter his testimony given under oath.  These changes are therefore stricken.

Changes to testimony at 433:9 to 434:5: These changes are also material because they relate to plaintiffs' claims that excess inventory was ordered.  Mr. Payne claims he remembered additional details later and is adding them to his answer to completely answer the question.  The questions do not even ask about Mr. Parker's contacts with Chrysler.  Mr. Payne's change that the Ford representative was aware excess inventory was ordered but did

not know why it had been ordered contradicts his previous testimony that Mr. Parker did not tell him anything else about his contacts with Ford. The earlier testimony does not reflect any confusion. Mr. Payne cannot now add details to his previous answers while he is not under oath and cannot be further examined. These changes are therefore stricken.

Changes to testimony at 436:21 to 437:5: This change once again relates to excess inventory and is therefore material. Specifically, this question relates to whether Mr. Payne thought the Agreement specifically states that he would assume "open orders." In this line of questioning, counsel for T.E.N. used several other terms, including "incoming order–orders of vehicles" and "unfulfilled orders of vehicles." After Mr. Payne answered the question about the Agreement, he was asked whether there were other documents which required him to assume and pay for any unfulfilled orders of vehicles. T.E.N.'s counsel then clarified that he meant open orders. This testimony reflects some confusion which Mr. Payne's affidavit attempts to explain. This change is therefore not stricken.

Changes to testimony at 521:4-12; 521:13-16; 521:17-21; & 524:1-4: These changes relate to excess inventory and are material. The deposition testimony does not reflect any confusion. Mr. Payne states that he wants to change his answers after reviewing a general ledger, his documents he brought to his February 27, 2008 deposition, and/or documents previously presented to T.E.N. There is no indication these documents are newly discovered evidence and that Mr. Payne did not have access to them at the time of his deposition. Indeed, in some cases, he even states that he reviewed documents he had brought with him

to his deposition.  The court also agrees with T.E.N. that Mr. Payne, as plaintiffs' 30(b)(6) representative, should have been prepared to testify to this information.  T.E.N.'s 30(b)(6) notice states that the representative should be knowledgeable and able to testify with respect to issues listed in exhibit A, which specifically includes information as to excess inventory.[19] These changes are stricken.

Changes to testimony at 593:9-14: This change relates to excess inventory and T.E.N.'s defense that Mr. Payne approved the purchase of certain inventory because he wanted to grow the dealerships.  This change is therefore material.  Mr. Payne's change is not based on newly discovered evidence.  Mr. Payne argues that T.E.N.'s counsel did not present the exhibit discussed during the deposition with its true content.  The court does not find the deposition testimony reflects any confusion.  Mr. Payne was asked whether he made a representation regarding his intent to expand in a letter to Ford Motor Company, and he agreed that he made such a representation.  Now, Mr. Payne attempts to explain the representation in detail by adding how and when he intended to expand the dealerships.  The court finds that Mr. Payne's change is more than a mere clarification and should therefore be stricken.

IV.  Conclusion & Order

In consideration of the foregoing,

IT IS HEREBY ORDERED:

------

[19]Doc. 82, at 2, 4.

1.      T.E.N.'s motion to strike **(doc. 155)** is granted in part and denied in part.

2.      Specifically, all of the deposition changes challenged by T.E.N. are stricken, except for those relating to Mr. Payne's deposition testimony at 260:3-13 and 436:21 to 437:5.

Dated this 4th day of August 2008, at Kansas City, Kansas.

 s/James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge