## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ODESSA FORD, LLC et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| T.E.N. INVESTMENTS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**CIVIL ACTION**
**No: 07-2161-KHV**

_____ )

## MEMORANDUM AND ORDER

This matter is before the Court on <u>Defendant's Motion For Reconsideration</u> (Doc. #203)

filed December 22, 2008 and <u>Defendants' [sic] Motion For Attorneys' Fees</u> (Doc. #205) which

T.E.N. Investments, Inc. ("T.E.N.") filed December 30, 2008.[1]  In its motion for reconsideration,

T.E.N.  asserts that the Court erred in denying its <u>Motion To Tax Attorney's Fees And Costs</u> (Doc.

#151) against Monopoly Acquisitions, LLC.  <u>See</u> <u>Memorandum And Order</u> (Doc. #197) ("<u>Fee</u>

<u>Order</u>") dated December 8, 2008.  In its second motion for fees, T.E.N. asserts that it is entitled to

fees from Odessa Ford, LLC and Odessa Chrysler, LLC (the "Odessa plaintiffs").  Specifically,

T.E.N. complains (1) that the Odessa plaintiffs acted in bad faith when they continued to litigate

after the Court dismissed Monopoly from the case and (2) equity supports such an award under Rule

54(c), Fed. R. Civ. P., because the contract between T.E.N. and Monopoly contemplates attorneys'

fees.  <u>See</u> <u>Memorandum In Support Of Motion For Attorneys' Fees</u> (Doc. #206) filed December 30,

2008.  For  reasons stated below, defendant's motions are overruled.

## Factual and Procedural Background

_____

[1]      On January 26, 2009 District Judge Carlos Murguia recused from the case, and the
Court reassigned it to Chief Judge Kathryn H. Vratil for further proceedings.  <u>See</u> <u>Order of Recusal</u>
(Doc. #212).

Monopoly and the Odessa plaintiffs filed suit against T.E.N. and various officers, directors, and shareholders stemming from a 2005 asset purchase agreement between Monopoly and T.E.N.[2] See Complaint (Doc. #1) filed April 20, 2007.  In May of 2007 defendants moved to dismiss all claims except Monopoly's breach of contract claim and all defendants except T.E.N.[3] On September 19, 2007, Judge Murguia granted defendants' motion and dismissed all but Monopoly's breach of contract claim against T.E.N.  See Memorandum and Order (Doc. #48) at 8.  At that time, T.E.N. had no pending claim for attorneys' fees.

Despite the order of dismissal, the Odessa plaintiffs and T.E.N. continued litigating as though the Odessa plaintiffs still had a pending claim.  The Odessa plaintiffs filed four motions to extend the deadline to name experts and served discovery requests; T.E.N. opposed the extensions, served its own discovery requests and deposition notices (including Rule 30(b)(6) notices to Monopoly and the Odessa plaintiffs) and filed a motion to compel discovery from Monopoly.

Two months after the Court dismissed all claims except the Monopoly breach of contract claim against T.E.N., T.E.N. moved to dismiss that claim.  The basis for the motion was that in response to its motion to compel, Monopoly had admitted that it had suffered no damages.  See Defendant T.E.N. Investments, Inc's Memorandum In Support Of Its Motion To Dismiss The Claim Of Monopoly Acquisitions, LLC (Doc. #94) filed December 28, 2007.  In response, Monopoly

---

[2]        The individual defendants were Andrew Soave, Darlene Soave, Andrea Soave, Angelique Soave, Bryant Frank, Kathleen McCann, Richard Brockhuas, Michael Hollerbach, Michael L. Piesko and Yale Levin.

[3]        In its motion to dismiss, T.E.N. contended that only Monopoly (and not the Odessa plaintiffs) asserted a breach of contract claim.  See Memorandum In Support Of Motion To Dismiss (Doc. #16) and Pretrial Order (Doc. #147) at 5, fn. 3.  Plaintiffs made no move to correct this assertion and the Court therefore dismissed all claims and all defendants except Monopoly's breach of contract claim against T.E.N.  See Memorandum And Order (Doc. #48).  Later, despite the order of dismissal, the Odessa plaintiffs asserted that they also had breach of contract claims, that T.E.N.'s motion erroneously attributed the contract claim only to Monopoly, and that T.E.N. had therefore failed to answer their breach of contract claim and was in default.

consented to dismissal, see Monopoly Acquisitions, LLC's Response to Defendant's Motion To Dismiss the Claim of Monopoly Acquisitions, LLC (Doc. #100), and the Court granted the motion to dismiss.  See Order (Doc. #113) dated February 5, 2008.[4]

Even though the Court had dismissed all claims, T.E.N. and the Odessa plaintiffs continued litigating the case for another ten months.  T.E.N. served more deposition notices and discovery requests, designated experts, filed yet another motion to dismiss as a discovery sanction against the Odessa plaintiffs, moved for summary judgment (partially on the ground that no live claims remained in the case), filed no fewer than three motions to strike and moved for attorneys' fees.  T.E.N. also sought leave to file an amended answer to assert a "claim" for costs and attorneys' fees from the plaintiffs, including then-dismissed Monopoly, which Magistrate Judge James P. O'Hara ultimately granted.  T.E.N. filed the amended answer.  The Odessa plaintiffs similarly served deposition notices, moved for partial summary judgment and responded and sur-replied to T.E.N.'s numerous motions.  Eight months after their claims against T.E.N. had been dismissed, the Odessa plaintiffs went so far as to assert that T.E.N. was in default.  See Pretrial Order at 5.

On December 8, 2008, Judge Murguia denied T.E.N.'s motion to assess fees against Monopoly.  See Memorandum and Order (Doc. #197).  In so doing, he found that a fee award was not warranted because Monopoly had been dismissed pursuant to 41(a)(2), Fed. R. Civ. P., which gave the Court discretion to order attorney's fees but required it to give Monopoly the opportunity to withdraw its consent to dismissal before imposing such an obligation, and no such order had been entered at the time Monopoly was dismissed.  Judge Murguia further found that because the case should have been closed when Monopoly was dismissed, the issues were frozen at that point and T.E.N.'s subsequent amended answer which purported to assert a claim for fees was in effect

---

[4]        The Court dismissed Monopoly without prejudice and to the extent T.E.N. wished to pursue dismissal with prejudice, instructed it to seek reconsideration.  See id.

irrelevant.  The Court did not impose terms when Monopoly consented to dismissal and the Court found it was not in the interest of justice to do so after the case should have been closed.

The Court entered a companion order on December 8, 2008 which addressed the parties' competing motions for summary judgment.  It found that the Odessa plaintiffs were not real parties in interest capable of maintaining the breach of contract claim, and offered Monopoly an opportunity to rejoin the case to prosecute its claim for breach of contract.  See Memorandum And Order (Doc. #198) entered December 8, 2008.  After Monopoly declined to rejoin, the Court dismissed the case. See Order (Doc. #200) entered December 16, 2008.  On December 17, 2008 the Court entered judgment in favor of defendants.  See Judgment (Doc. #202).  On December 22, 2008, T.E.N. filed its motion for reconsideration of the order denying fees (Doc. #203).  On December 30, 2008, T.E.N. filed its motion for attorneys' fees (Doc. #205).

**Motion For Reconsideration**

I.      Legal Standard

A court has discretion whether to grant a motion to reconsider.  Brumark Corp. v. Samson Res. Corp., 57 F.3d 941, 944 (10th Cir. 1995).  A motion which asks the Court to reconsider a non-dispositive order "shall be based on (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice."  D. Kan. Rule 7.3(b).  In general, a motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence.  Sump v. Fingerhut, Inc., 208 F.R.D. 324, 327 (D. Kan. 2002) citing Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc., 115 F. Supp. 2d. 1250, 1256 (D. Colo. 2000).  A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments or to dress up arguments that previously failed.  See Voelkel v. Gen. Motors Corp., 846 F.Supp. 1482, 1483 (D. Kan.1994), aff'd, 43 F.3d 1484 (10th

Cir.1994).  Such motions are not appropriate if movant only wants the Court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally.  See Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir.1991), cert. denied, 506 U.S. 828 (1992).  Reconsideration may be appropriate, however, if the Court has misapprehended the facts, a party's position or the controlling law.  See Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000); accord O'Connor v. Pan Am Corp., 5 Fed. Appx. 48,  56 (2d. Cir. 2001).

II.      Analysis

T.E.N. asks the Court to reconsider the order denying its fee request (Doc. #197) in "the interest of justice."  T.E.N. asserts that the Court clearly erred and committed manifest injustice because it did not consider that Chris Payne, the sole owner of all three plaintiffs, committed fraud when he agreed to dismiss Monopoly to avoid its discovery obligations while maintaining the contract claim against T.E.N.  T.E.N. identifies no legal or factual error, however, and presents no newly discovered evidence in support of this motion.

T.E.N. based its initial motion for fees on a contract theory:  that it was entitled to recover fees under a prevailing party provision in the contract between it and Monopoly.  Because it had not ordered Monopoly to pay fees as a condition of dismissal, however, the Court disagreed and held that Rule 41(a)(2), Fed. R. Civ. P., precluded a fee award.  The Court noted that because T.E.N. had amended its complaint to assert its claim for attorneys' fees well after Monopoly had been dismissed and the case should have been closed, Rule 41(a)(2) precluded a post-dismissal fee award against Monopoly.

T.E.N. seeks reconsideration on a wholly different theory:  that the Court should punish Monopoly for misconduct during the lawsuit.  T.E.N. skirts the Court's discussion of Rule 41(a)(2) and argues that it is entitled to fees under Rule 54(c) because Payne knew that fees were available

under the contract and expected them to be awarded.[5]  Whether Payne knew or should have known

about potential liability for attorneys' fees is irrelevant, however, to the Court's decision.  The issue

was not whether Monopoly had notice of a potential fee award, but whether it had the opportunity

to withdraw its consent to dismissal if the Court had conditioned dismissal upon payment of

attorneys' fees.  T.E.N. presents no evidence that when the Court dismissed its first request for fees,

it misapprehended the facts, T.E.N.'s position or the controlling law.  It argues a new theory which

it could have presented in its original motion.  Accordingly, its motion for reconsideration is without

merit and is overruled.

### Motion For Attorney's Fees

In its second motion for fees, T.E.N. asks the Court to award attorneys' fees because (1) the

Odessa plaintiffs pursued claims in bad faith, and (2) they intended that fees be awarded under the

contract between Monopoly and T.E.N.[6]  T.E.N. contends that its request for $497,030.03 in

attorneys' fees is reasonable "in light of plaintiffs' litigation conduct."[7]  In this motion, T.E.N. does

---

[5]         In part, Rule 54(c) provides that a final judgment "should grant the relief to which
each party is entitled, even if the party has not demanded that relief in its pleadings."  Fed. R. Civ.
P. 54(c).

[6]         From T.E.N's motion and corresponding memorandum in support, it is unclear
whether T.E.N. seeks bad faith fees only from the Odessa plaintiffs or also from Monopoly.  To the
extent it seeks a bad faith determination as to Monopoly, the Court treats this request as a second
motion to reconsider its decision to deny the prior request for fees, and summarily denies it.
Motions to reconsider are not a second (or third) opportunity for the losing party to make its
strongest case, Voelkel, 846 F.Supp. at 1483, and they are not appropriate if movant only wants the
Court to hear new arguments that could have been presented originally.  See Van Skiver, 952 F.2d
at 1243.

[7]         It appears that the fees which T.E.N. seeks to recover – $369,621.20 in attorneys'
fees and $127,408.83 in expert witness fees – were incurred over the entire span of the litigation.
See Doc. #206 at 9; Ex. B & C, Doc. #206.  In its brief, T.E.N. seeks the full amount of attorneys'
fees but also states that it is entitled to recover those fees which it incurred after the Court dismissed
(continued...)

not seek to enforce a contractual fee provision.

Under Rule 54(d)(2), Fed. R. Civ. P., a party which seeks to recover attorneys' fees must make its claim by motion no later than 14 days after entry of judgment, specify the rule, statute or other grounds for the fee award, and state the amount sought. The clerk entered judgment against plaintiffs on December 17, 2008 (Doc. #202) and T.E.N. timely filed its motion for fees on December 30, 2008.

I.    Bad Faith

    A.    Legal Standard

Under the so-called American Rule, parties bear the costs of their own attorneys' fees. Poindexter v. Morse Chevrolet, Inc., 282 F. Supp.2d 1232, 1235 (D. Kan. 2003) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991)). The longstanding American Rule generally bars prevailing parties from recovering attorneys' fees in the absence of a statute or enforceable contract providing for such an award. Poindexter at 1235, n. 4. The Supreme Court recognizes certain exceptions to the American Rule, however, and one such exception allows courts to assess attorneys's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. (quotations and citations omitted). This exception derives from the courts' inherent power to sanction conduct that abuses the judicial process. Id. (quotations and citations omitted). Fees awarded under the bad-faith exception are punitive and designed to punish that abuse. Id. (quotations and citations omitted). The imposition of sanctions under the bad-faith exception depends not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation. Towerridge Inc. v. T.A.O., Inc., 111 F.3d 758, 766 (10th Cir. 1997) (quotations and citations omitted). Whether the bad faith exception

---

      [7](...continued)
Monopoly in February of 2008. See Doc. #206 at 1.

applies turns on the party's subjective bad faith unless the conduct is so frivolous as to be patently impermissible. F.T.C. v. Kuykendall, 466 F.3d 1149, 1152 (10th Cir. 2006); Mountain West Mines, Inc. v. Cleveland-Cliffs Iron Co., 470 F.3d 947, 953 (10th Cir. 2006).

The Tenth Circuit sets a high bar for bad faith awards to avoid deterring those with colorable (albeit novel) legal claims from testing them in federal court. Id. Bad faith requires more than a showing of a weak or legally inadequate case. Cornwall v. Robinson, 654 F.2d 685, 687 (10th Cir. 1981). Accordingly, courts awarding bad faith attorneys' fees must explain the factual basis upon which they make their bad faith conclusion. Sterling Energy, Ltd. v. Friendly Nat. Bank, 744 F.2d 1433, 1437-38 (10th Cir. 1984). This typically requires the court to make specific findings of fact on the issue. Id.

Because the primary purpose of the bad faith exception is to punish the litigant for abusing the court and the litigation process, a fee award to the opponent is compensatory – it makes the opponent whole for expenses caused by the offending conduct. 10 JAMES WM MOORE ET AL., MOORE'S FEDERAL PRACTICE §54.171[2][c][v] (3d ed. 1999). Accordingly, any fee award under the bad faith exception should be narrowly tailored to punish only the offending conduct, and should compensate only those attorney's fees incurred in response to that conduct. Id.

The Tenth Circuit recognizes three types of bad faith conduct: (1) bad faith occurring during the course of the litigation; (2) bad faith in bringing an action or causing an action to be brought; and (3) bad faith in the acts giving rise to the substantive claim. Towerridge Inc., 111 F.3d at 766 (citing Shimman v. Int'l Union of Operating Engineers, Loc. 18, 744 F.2d 1226, 1230-31 (6th Cir. 1984)). The third category – bad faith in the acts giving rise to the substantive claim – does not support a fee award because it involves pre-litigation conduct which does not fall within the bad-faith exception. Id. The first two categories, however, involve conduct which may justify a fee award. Id. First,

-8-

conduct during the course of the litigation which abuses the judicial process constitutes bad faith and undisputably, at the discretion of the court, warrants sanction through the charging of fees. Id. Similarly, when a party maintains a meritless claim or defense, either by instituting an unfounded action wantonly or for oppressive reasons, or by necessitating that an action be filed or asserting a colorless defense, it engages in bad faith which is grounds for a fee award. Id.

      B.    <u>Analysis</u>

Whether the Odessa plaintiffs committed bad faith which warrants a fee award turns on the degree to which they engaged in bad faith during the course of the litigation or in bringing their claims against T.E.N.  While T.E.N. does not specify which of the three types of bad faith plaintiffs allegedly committed, the conduct about which T.E.N. complains arguably falls within both categories for which fees may be awarded.  T.E.N. identifies the following conduct as evidence of bad faith: (1) Monopoly sued on a claim for which it knew it had no damages; (2) during the litigation the Odessa plaintiffs manufactured a sham oral assignment so that they could maintain the breach of contract claim while allowing Monopoly to exit the litigation to avoid discovery; and (3) the Odessa plaintiffs engaged in dilatory tactics, failed to produce evidence in discovery, misled T.E.N. regarding certain factual information and refused to obey the court's discovery order.

T.E.N.'s argument that Monopoly sued on a claim for which it knew it had no damage does not support a bad faith fee award against the Odessa plaintiffs.  The bad faith exception is punitive, and the Court cannot punish the Odessa plaintiffs for conduct in which they did not engage.[8]

---

    [8]      T.E.N. complains ad nauseam about Payne, who owns Monopoly and the Odessa plaintiffs.  It is axiomatic, however, that under Kansas law a corporation and its stockholders are presumed separate and distinct, regardless of the number of stockholders, unless the corporation is used as a mere instrumentality for the stockholder to carry out his personal business – in which case the corporate identity can be "pierced".  <u>Pizza Mg't, Inc. v. Pizza Hut, Inc.</u>, 737 F. Supp. 1154, 1174 (continued...)

Second, in his <u>Report and Recommendation</u> (Doc. # 164) dated July 10, 2008, Judge O'Hara discussed at length the discovery-related conduct of the Odessa plaintiffs.  In so doing, he found that while the Odessa plaintiffs did disobey his discovery order of January 18, 2008, the failure had "not greatly interfered with the judicial process."  <u>Id.</u> at 19.  This finding obviates a fee award because to merit a bad faith award, conduct during the course of litigation must abuse the judicial process.  <u>See</u> <u>Towerridge Inc.</u>, 111 F.3d at 766.  T.E.N. has provided no evidence to contradict Judge O'Hara's finding and a fee award for this category of conduct therefore is unwarranted.[9]

T.E.N.'s remaining complaint is that the Odessa plaintiffs manufactured a sham oral assignment during the litigation so that they could maintain the breach of contract claim and Monopoly could exit the litigation to avoid discovery.  Indeed, Judge Murguia found that the Odessa

_____

[8](...continued)

(D. Kan. 1990) (internal citations omitted).  While T.E.N. appears to ask the Court to indiscriminately attribute Payne's conduct on behalf of Monopoly to the Odessa plaintiffs, it makes no effort to show that the corporate identities of Monopoly and the Odessa plaintiffs are so commingled as to warrant such treatment.  The Court therefore declines to do so.

[9]        Judge  O'Hara recommended that the Odessa plaintiffs be ordered to reimburse T.E.N. for the fees which its expert incurred in analyzing Payne's refigured damages between February 27 and March 3, 2008 and the fees which its attorneys incurred in bringing the <u>Motion to Dismiss</u> (Doc. #122).  Despite having sought alternative remedies for discovery misconduct, T.E.N. objected to Judge O'Hara's recommendation that it receive fees rather than outright dismissal.  <u>See</u> <u>Defendant's Objections to Magistrate's Report and Recommendation</u> (Doc. #168) filed July 21, 2008.  In so doing, it essentially argued that a fee award was irrelevant because it expected to receive a full fee award later when it prevailed "as a matter of law, due to the specious nature of the underlying claim" and that "it would be entitled to these fees and rulings regardless of the outcome of T.E.N.'s Motion to Dismiss." <u>Id.</u> at 4.
          On December 16, 2008, after the Court determined that the Odessa plaintiffs were not real parties in interest capable of maintaining the breach of contract claim, the Court dismissed the case when Monopoly declined to rejoin.  <u>See</u> <u>Memorandum And Order</u> (Doc. #198) entered December 8, 2008 and <u>Order</u> (Doc. #200) entered December 16, 2008.  In light of the dismissal on those grounds, the Court then denied as moot the discovery-related motion to dismiss and found as moot the related report and recommendation.  <u>See</u> Doc. #201.  In so doing, Judge Murguia noted that all parties had objected to the report and recommendation. <u>Id.</u>

plaintiffs had attempted to create a sham fact issue when they submitted a declaration by Payne which said that he had assigned the Odessa plaintiffs *all* of Monopoly's rights under its contract with T.E.N. (rather than simply its rights to assets).  See Memorandum and Order (Doc. #198).  Judge Murguia found that this statement was obviously inconsistent with other evidence in the case, and concluded that the declaration should be disregarded.  Id.  Because no other evidence showed that Monopoly had assigned all of its contractual rights to the Odessa plaintiffs, the Court determined that the Odessa plaintiffs were not real parties in interest to the contract and dismissed the one (purportedly) remaining claim.  Id.

T.E.N. argues that the sham declaration is evidence of the bad faith of the Odessa plaintiffs, in that they used it to manufacture evidence of a full contractual assignment to maintain the breach of contract claim which Monopoly had abandoned.  The Odessa plaintiffs do not directly contradict this assertion, but argue that (1) the declaration simply states what it states (that Payne assigned Monopoly's contract to the Odessa plaintiffs), (2) T.E.N. led the Odessa plaintiffs to believe that T.E.N. would not challenge their contractual rights and (3) to award T.E.N. the full amount of fees expended over the course of the litigation ($497,030.03) would be disproportionate to any damage which the declaration caused.

The Court finds that the Odessa plaintiffs appear to have engaged in bad faith when they submitted and relied upon the sham declaration in an apparent attempt to maintain a breach of contract claim against T.E.N., and that they have conceded as much.  The Court dismissed their breach of contract claims early in the litigation, and they had no legal or factual basis for attempting to pursue a breach of contract claim against T.E.N.  That said, T.E.N. is not blameless.  Even after the Court dismissed all claims against it, it continued to vigorously litigate the case and incur hundreds of thousands of dollars in litigation expenses.

Any fee award under the bad faith exception should be narrowly tailored to punish only the offending conduct and should compensate only those attorney's fees incurred in response to that conduct.  10 JAMES WM MOORE ET AL., MOORE'S FEDERAL PRACTICE §54.171[2][c][v] (3d ed. 1999). As a matter of fact and law, the Court cannot determine whether any of T.E.N.'s claimed fees are attributable solely to the sham declaration.  Accordingly, the Court in its discretion declines to award fees under the bad faith exception.

II.   Equitable award under Rule 54(c)

A.   Legal Standard

Under Rule 54(c), every final judgment "shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."  Fed. R. Civ. P. 54(c).  This provision permits prevailing parties who fail to include a specific attorney fee request in their complaint or answer to seek a fee award under Rule 54(c) so long as the pleadings contain allegations which do, or should, put the parties on notice that a fee award is possible.  Atchison Casting Corp. v. Dofasco, Inc., No. 93-2447-JWL, 1995 WL 655183, *5 (D. Kan. Oct. 24, 1995). To put the parties on notice of the potential for a fee award, the complaint (or pretrial order) must assert a claim for which attorneys' fees are clearly contemplated, such as under 42 U.S.C. § 1983 (which triggers attorneys' fees under 42 U.S.C. §1988), or under a contract which contains a clear fee award provision.  Id.

B.   Analysis

T.E.N. makes a novel claim under Rule 54(c): that equity supports a fee award because the Odessa plaintiffs expected to be liable for fees because they knew that Monopoly believed the contract between Monopoly and T.E.N. provided for such an award.  T.E.N. argues that because the Odessa plaintiffs purported to assume all of Monopoly's rights under the contract (albeit

-12-

unsuccessfully), they cloaked themselves with the rights and responsibilities of the contract including the prevailing party fee provision.  T.E.N. cites no authority for this novel proposition, which is an obvious attempt to circumvent the Court's prior ruling that T.E.N. cannot bring a contract-based claim for attorneys' fees against Monopoly because it did not assert such a claim before the Court dismissed Monopoly.  T.E.N. adamantly argues that it does *not* contend that the contract should be enforced per se against the Odessa plaintiffs.  It argues that because the Odessa plaintiffs knew about the fee shifting provision and hoped to benefit from it, equity demands that they also be burdened by it.[10]

The Court is unpersuaded.  First, Rule 54(c) arguably does not apply because T.E.N. received leave to amend its pleading to include a claim for contractual attorneys fees – a claim which ultimately proved unenforceable because it had previously agreed to dismiss Monopoly and the Odessa plaintiffs were not real parties in interest to the contract.  Further, even if Rule 54(c) applies, T.E.N. cites no authority, and the Court has discovered none, which permits such an equitable fee award against a party which otherwise has no contractual or statutory obligation to pay fees.[11]  The

---

[10]    The Odessa plaintiffs assert that T.E.N. is judicially estopped from seeking fees under the contract because its argument contradicts a position to which it adhered throughout the litigation: that the Odessa plaintiffs were not parties to the contract and had no standing to bring a claim under it. Judicial estoppel prevents a person or party who takes a certain position in a legal proceeding and succeeds in maintaining that position before a court from assuming a clearly inconsistent position in some later proceeding. Stallings v. Hussman Corp., 447 F.3d 1041, 1047 (8th Cir. 2006); accord United States v. Vollagrana-Flores, 467 F.3d 1269, 1278 (10th Cir. 2006).  T.E.N. counters that estoppel does not apply because it does not seek fees under the contract per se, but on grounds of equitable entitlement.

Judicial estoppel does not apply. The contrary positions which T.E.N. advanced – namely, that the Odessa plaintiffs were not parties who could enforce the contract but have an equitable duty to pay attorneys' fees for attempting to enforce it – are legal theory, not fact. Johnson v. Lindon, 405 F.3d 1065, 1069 (10th Cir. 2005) (position to be estopped must generally be one of fact rather than law or legal theory).

[11]    Whether T.E.N. can maintain a separate action against Monopoly to enforce the
(continued...)

-13-

Court therefore declines to award fees on this ground.

**IT IS THEREFORE ORDERED** that <u>Defendant's Motion For Reconsideration</u> (Doc. #203)

filed December 22, 2008 and <u>Defendants' [sic] Motion For Attorneys' Fees</u> (Doc. #205) filed

December 30, 2008 be and hereby are **OVERRULED**.

Dated this 9th day of June, 2009 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

_____

[11](...continued)
contractual attorney fee provision is not before this Court.